UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| HECTOR CHAPA, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 7:15-CV-30 |
| | § | |
| ALLSTATE TEXAS LLOYDS, *et al*, | § | |
| | § | |
| Defendants. | § | |

**OPINION AND ORDER**

Pending before the Court is the motion for summary judgment filed by Defendant Allstate Texas Lloyds ("Allstate").[1] Hector and Elsy Chapa ("Plaintiffs") filed a response in opposition.[2] After considering the motion, response, record, and relevant authorities, the Court **GRANTS** Allstate's motion.

**I. Background**

The following facts are undisputed. On March 29, 2012, a wind and hail storm struck the Rio Grande Valley causing significant damage to Plaintiffs' home.[3] Plaintiffs immediately filed a claim with Allstate on March 30, 2012, which was given the claim number 0239926313.[4] On April 9, 2012, an adjuster from Allstate inspected the claim and determined the replacement cost value for the hailstorm damage amounted to $24,713.17.[5] To pay the claim, Allstate made an initial cash value payment to Plaintiffs on April 10, 2012, which is the date they assert the claim was settled in accordance with the policy,[6] and provided a recoverable depreciation payment

---

[1] Dkt. No. 6 ("Motion").
[2] Dkt. No. 7 ("Response"); Dkt. No. 11, Exhibits.
[3] Dkt. No. 6, Exh. A ("Complaint") at p. 3.
[4] Dkt. No. 6, Exh. G ("Claim Diary") at p. 1.
[5] Motion at ¶4; Claim Diary at pp. 5-7.
[6] Dkt. No. E.

when the repairs were completed on June 22, 2012.[7] Allstate closed the claim on June 22, 2012[8] and had no further communication with Plaintiffs for almost two years.[9]

On June 12, 2014, Correct Claim Public Adjusters ("Correct Claim") sent a letter notifying Allstate that Mr. Chapa had retained the firm in relation to the loss investigated in claim number 0239926313.[10] On June 16, 2014, Allstate sent two letters to Correct Claim. The first letter acknowledged receipt of Correct Claim's letter of representation and stated that Allstate was "continuing to investigate [the] insured's claim."[11] The second letter informed Correct Claim that a re-inspection would not be granted.[12] In the second letter, Allstate further stated: "If you are not in agreement with our estimate for repairs, then we request that you submit a detailed estimate for further review. If you are including repairs for damages which were not included in our estimate, then we are also requesting photos that show the additional damages."[13] At the end of the letter, Allstate expressly reserved all rights and defenses with regards to the claim[14] and followed up with a letter on June 17, 2014 reiterating that "any activity on [Allstate's] part by way of investigation, damage determination, or emergency advance payments to [Plaintiffs], does not constitute a waiver of [Allstate's] rights."[15] The June 17, 2014 letter states that Allstate reserves the right to deny coverage for the March 29, 2012 loss "supplement" because the request came twenty-six months after the loss was settled on April 10, 2012.[16]

---

[7] Motion at ¶4; Claim Diary at p. 9.
[8] Claim Diary at p. 10.
[9] Motion at ¶4; Claim Diary at pp. 10-11.
[10] Dkt. No. 6, Exh. C.
[11] Dkt. No. 7, Exh. 3.
[12] Dkt. No. 6, Exh. D.
[13] *Id.*
[14] *Id.*
[15] Dkt. No. 6, Exh. E.
[16] *Id.*

On August 4, 2014, Correct Claim sent Allstate a damages estimate for Plaintiffs' home totaling $67,671.40.[17] In response, on August 4, 2014, Allstate replied:

> It appears you do not agree with our adjuster's evaluation of our insured's claim. Unfortunately, we cannot accept the photos and estimate as a true scope of damages that occurred as a result of the event that took place on or about March 29, 2012. After review of the photos that you have submitted, we have determined that they show damages which we have addressed in our estimate and they also show damages which were not present during our inspection of the loss on April 9, 2012. If you feel that the additional damages were caused by loss that we cover, then these damages may be pursued under another claim.
>
> Allstate does not anticipate any additional changes or adjustments to our estimate. We believe that our estimate includes all operations that are needed in order to restore the property to its pre-loss condition. As you are aware there are remedies and provisions within the policy to resolve differences as exist on this loss. We are certain you will advise our insured as to how to proceed should they still find themselves in disagreement with Allstate's decision on this claim.[18]

Plaintiffs maintain that, with the exception of damage to the hot tub, all of the damage evaluated by Correct Claim was present at the time of the Allstate inspection on April 9, 2012 and Plaintiffs retained Correct Claim to assist with the underpayment of their claim.[19] Plaintiffs filed the instant lawsuit in state court on December 19, 2014 alleging causes of action for breach of contract, violations of Section 542 of the Texas Insurance Code regarding prompt payment of claims, violations of Section 541 of the Texas Insurance Code regarding unfair settlement practices, breach of the duty of good faith and fair dealing, and violations of the Texas Deceptive Trade Practices Act.[20]

## II. Cautionary Note

As an initial matter, the Court notes that Plaintiffs have failed to comply with the Federal Rules of Civil Procedure with regard to the instant filings. Federal Rule of Civil Procedure 11(a) requires that "[e]very pleading, written motion, and other paper must be signed by at least one

---

[17] Claim Diary at pp. 16.
[18] Dkt. No. 6, Exh. F.
[19] Dkt. No. 7, Exh. D.
[20] *See* Complaint.

attorney of record in the attorney's name."[21] Additionally, LR11.3 of the Local Rules of the United States District Court for the Southern District of Texas requires that "[e]very document filed must be signed by, or by permission of, the attorney-in-charge." Though Plaintiffs' response lists Mr. Craig Saucier as the attorney-in-charge, neither the motion nor the certificate of service are signed. Mr. Saucier is cautioned that it is imperative for future submissions to *include a signature* to properly comply with the Rules.

### III. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56, summary judgment is proper when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[22] A fact is "material" if its resolution could affect the outcome of the action,[23] while a "genuine" dispute is present "only if a reasonable jury could return a verdict for the non-movant."[24] As a result, "[o]nly disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment."[25]

In a motion for summary judgment, the movant bears the initial burden of showing the absence of a genuine issue of material fact.[26] In this showing, "bald assertions of ultimate fact" are insufficient.[27] Absent a sufficient showing, summary judgment is not warranted, the analysis is ended, and the non-movant need not defend the motion.[28] On the other hand, the movant is freed from this initial burden on matters for which the non-movant would bear the burden of proof at trial; in that event, the movant's burden is reduced to merely pointing to the absence of

---

[21] The Court finds the words of Justice Scalia prudent guidance on this point: "It has long been thought the better practice for the attorney complying with Rule 11 not to sign *for* his firm, but to sign in his individual name and on his own behalf, with the name of his firm beneath" (*Pavelic & LeFlore*, 493 U.S. 120, 126)(emphasis in original).
[22] FED. R. CIV. P. 56(a).
[23] *Burrell v. Dr. Pepper/Seven UP Bottling Grp., Inc.*, 482 F.3d 408, 411 (5th Cir. 2007) (internal quotation marks and citation omitted).
[24] *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006) (citation omitted).
[25] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[26] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).
[27] *Gossett v. Du-Ra-Kel Corp.*, 569 F.2d 869, 872 (5th Cir. 1978) (citation omitted).
[28] *See Celotex Corp.*, 477 U.S. at 323.

evidence.[29] If the movant meets its initial burden, the non-movant must then demonstrate the existence of a genuine issue of material fact.[30] This demonstration must specifically indicate facts and their significance, and cannot consist solely of "conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation."[31]

In conducting its analysis, the Court considers evidence from the entire record and views that evidence in the light most favorable to the non-movant.[32] Thus, although the Court refrains from determinations of credibility and evidentiary weight, the Court nonetheless gives credence to all evidence favoring the non-movant; on the other hand, regarding evidence that favors the movant, the Court gives credence to evidence that is uncontradicted and unimpeachable, but disregards evidence the jury is not required to believe.[33]

Rather than combing through the record on its own, the Court looks to the motion for summary judgment and response to present the evidence for consideration.[34] Parties may cite to any part of the record, or bring evidence in the motion and response.[35] By either method, parties need not proffer evidence in a form admissible at trial,[36] but must proffer evidence substantively admissible at trial.[37]

Finally, because federal jurisdiction is invoked on the basis of diversity of citizenship,[38] this Court, Erie-bound, must adhere to grounds of relief authorized by the state law of Texas.[39]

---

[29] *See Id.* at 323-25; *see also Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718-19 (5th Cir. 1995).
[30] *Id.*
[31] *U.S. ex rel. Farmer v. City of Houston*, 523 F.3d 333, 337 (5th Cir. 2008) (citing *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002)).
[32] *See Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000) (citations omitted).
[33] *Id.*
[34] *See* FED.R.CIV. P. 56(e).
[35] *See* FED. R. CIV. P. 56(c).
[36] *See Celotex Corp.*, 477 U.S. at 324 ("We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment.").
[37] *See Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012) ("[T]he evidence proffered by the plaintiff to satisfy his burden of proof must be competent and admissible at trial").
[38] *See* Dkt. No. 1 at ¶7.
[39] *See Exxon Co. U.S.A, Div. of Exxon Corp. v. Banque De Paris Et Des Pays-Bas*, 889 F.2d 674, 675 (5th Cir. 1989); *see also Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).

Absent a decision by a state's highest tribunal, the decisions by Texas courts of appeals are controlling "unless [the Court] is convinced by other persuasive data that the highest court of the state would decide otherwise."[40]

### IV. The Statute of Limitations Period

The parties generally agree on the facts and timeline presented, so there is no genuine issue of material fact before the Court. Additionally, the issue before the Court is not whether Allstate waived any rights or defenses that they repeatedly asserted in the letters. Instead, the Court is tasked with determining, as a matter of law, when Plaintiffs' causes of action accrued and whether the statute of limitations period tolled between when Allstate's involvement on the claim in 2012 and the most recent activity in 2014.

Allstate's policy with Plaintiffs clearly states: "No suit or action can be brought unless the policy provisions have been complied with. Action brought against [Allstate] must be started within two years and one day after the cause of action accrues."[41] The parties do not dispute that this is a proper contractually agreed upon limitations period for breach of an insurance contract in accordance with Texas state law.[42] Additionally, the parties seem to be in agreement that the statute of limitations for extra-contractual claims related to insurance contracts is also two years from when the cause of action accrues.[43] More specifically, a claim under the Deceptive Trade Practices Act-Consumer Protection must be brought within two years of the false, misleading, or deceptive act or practice,[44] and the same is true for claims under the Texas Insurance Code.[45]

---

[40] *Id.* (quoting *West v. AT&T*, 311 U.S. 223, 237 (1940)) (internal quotation marks omitted).
[41] Dkt. No. 6, Exh. H at p. 47.
[42] TEX. CIV. PRAC. & REM. CODE §16.070(a); *Spicewood Summit Office Condominiums Ass'n, Inc. v. America First Lloyds Ins. Co.*, 287 s.W.3d 461, 464-65 (Tex. App. — Austin 2009).
[43] TEX. BUS & COM. CODE §17.565.
[44] *Id.*
[45] TEX. INS. CODE §541.162(a). The Court notes that Section 542 of the Texas Insurance Code does not have a similar limitations provision, but that, as a contract-based remedy, it is also subject to appropriate limitation by the insurance policy.

At the center of the dispute between the parties is when the cause of action for the breach of contract and extra-contractual claims accrued. Allstate asserts that the cause of action accrued on the date they mailed the coverage-payment position letter and closed the claim, April 10, 2012.[46] Allstate further contends that any engagement it had with Public Claims did not restart the limitations period, especially since Allstate did not modify or act contrary to its original position.[47] In contrast, Plaintiffs claim that the statute of limitations did not expire "because Defendant reopened the claim on June 16, 2014, proceeded to investigate Plaintiffs' losses, and openly acknowledged additional damage on August 4, 2014."[48] Plaintiffs argue that the statute of limitations did not begin to run until August 4, 2014, the date of "the last determination" made by Allstate.[49] As a secondary argument, Plaintiffs assert that Allstate *reopened* and *restarted* the limitations period on August 4, 2014 "by acknowledging the additional damage to Plaintiffs' property, which resulted from a continuing problem and was caused by the same source as the other damages."[50] Thus, it is of the utmost importance, as a matter of law, for the Court to determine when Plaintiffs' causes of action accrued and whether the correspondence between Allstate and Correct Claim prevented the statute of limitations period from tolling or started the statute of limitations period anew.

### V. Applicable Law

The question of when a cause of action accrues is typically a question of law.[51] Generally, a cause of action accrues and the statute of limitations begins to run "when facts come into existence that authorize a party to seek a judicial remedy . . . regardless of when the plaintiff

---

[46] Motion at ¶8.
[47] *Id.*
[48] Response at ¶1.
[49] *Id.* at ¶3.
[50] *Id.* at ¶7.
[51] *Moreno v. Sterling Drug, Inc.,* 787 S.W.2d 348, 351 (Tex. 1990).

learns of that injury or if all resulting damages have yet to occur."[52] Importantly in this case, an insured's cause of action "accrues the moment an insurer should pay a claim but fails to do so" because "[a]t that moment, the insurer's wrongful conduct first causes harm to the insured."[53]

Under Texas law, a plaintiff's cause of action for bad-faith breach of a first-party insurance contract and violations of the Texas Insurance Code, DTPA, and duty of good faith and fair dealing accrue on the date the insurer denies the insured's claim.[54] The limitations period begins to run even though damage may continue to occur after the denial.[55] If there is no outright denial of a claim, the exact date of accrual of a cause of action may be a question of fact to be determined on a case-by-case basis.[56] However, the determination is only a fact issue if there is ambiguity surrounding the insurer's actions, such as stringing an insured along without denying or paying a claim.[57] There is no issue of fact if there is an unambiguous event by the insurance company indicating no further action will be taken on the claim, such as a writing conveying the final determination with respect to the damage or the closing of a claim file.[58]

In cases such as the one at hand, where the insurer paid the claim and closed the case file, the Fifth Circuit has found that the cause of action begins to accrue, at the latest, upon the issuance of a final letter and the closing of the claims file.[59] Any request by the plaintiff to reopen the claim does not toll or extend the limitations period following the claims decision.[60]

---

[52] *Provident Life and Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 221 (Tex. 2003)(citing *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 514 (Tex. 1998); *S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex. 1996)).
[53] *Murray v. San Jacinto Agency, Inc.*, 800 S.W.2d 826, 828 (Tex. 1990)(citing S. Ashley, *Bad Faith Liability: A State-By-State Review* §4.05(1987)).
[54] *Provident Life and Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 221 (Tex. 2003)(citing *Celtic Life Ins. Co. v. Coats*, 885 S.W.2d 96, 100 (Tex. 1994); *Murray v. San Jacinto Agency, Inc.*, 800 S.W.2d 826, 828 (Tex. 1990)).
[55] *Id.*
[56] *Murray v. San Jacinto Agency, Inc.*, 800 S.W.2d 826, 828 n.2 (Tex. 1990).
[57] *Provident Life and Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 222 (Tex. 2003)(referencing the situation in *Kuzniar v. State Farm Lloyds*, 52 S.W.3d 759, 761 (Tex.App. — San Antonio 2001, pet. denied)).
[58] *Id.* (also referencing *Mangine v. State Farm Lloyds*, 73 S.W.3d 467, 468 (Tex.App. — Dallas 2002, pet. denied)).
[59] *Castillo v. State Farm Lloyds*, 210 Fed.Appx. 390, 394 (5th Cir. 2006).
[60] *Id.*

Even if the insurance company is willing to review additional information, if it does not change its position on the claims, the limitations period continues to toll.[61]

Under *Arnold v. National County Mut. Fire Ins. Co.*,[62] the limitations period does not begin to run until full resolution of the underlying claims. However, any argument by Plaintiffs that the 2014 transactions were the "final resolution" of the claims, triggering the statute of limitations at that time, would lead to the absurd result that Plaintiffs' claims would have never been "finally resolved" and the limitations period would have never begun to run if Correct Claim had not sent a letter to Allstate in 2014. A similar argument was flatly denied by the Texas Supreme Court in *Murray v. San Jacinto Agency, Inc.*[63] In that case, the Texas Supreme Court found that the cause of action began to accrue at the time of the initial denial despite the insurance company's later statements regarding the claims. Thus, the unambiguous event indicating a conclusion of the claim on the part of the insurance company – the time when the harm to the plaintiff begins – is the date the statute of limitations begins to run. Any statements or activity on the part of the insurance company after the fact involving the claim do not forestall or renew the limitations period.

### VI. Analysis

The June 2014 correspondence between Allstate and Correct Claim is confusing and muddled at best. However, all of the equivocation and back and forth between the parties is legally insignificant concerning the statute of limitations. On June 22, 2012 the final repairs were made by Plaintiff, Allstate made the final payment, and the claims file was closed.[64] All parties agree that the claim was initially closed on June 22, 2012.[65] Thus, Plaintiffs were unambiguously

---

[61] *Id. See also Watson v. Allstate Texas Lloyd's*, 224 Fed.Appx. 335, 340 (5th Cir. 2007)(finding that the reinstatement of a claim does not restart the limitations period for a breach of contract claim).
[62] 725 S.W.2d 165, 168 (Tex. 1987).
[63] 800 S.W.2d 826, 828 (Tex. 1990).
[64] Motion at ¶4; Claim Diary at p. 9.
[65] Motion at ¶4; Response at ¶5.

aware that Allstate believed the matter to be resolved and had no intentions of making further payments. If the claim was undervalued, at the very latest, the injury to Plaintiffs began at that time. Thus, the causes of action for all of the claims began to accrue on June 22, 2012. The Fifth Circuit and Texas Supreme Court have made it exceedingly clear that later efforts to reopen the claim have no effect on the statute of limitations, even though Allstate agreed to review additional information. Since Allstate never changed its position on the claim, the statute of limitations for all of the causes of action expired on June 23, 2014. The instant lawsuit was filed on December 19, 2014, after the expiration of the limitations period. Thus, Plaintiffs' claims are barred by the statute of limitations.

## VII.   Holding

The Court, as a matter of law, finds that Plaintiffs' claims are time-barred. The statute of limitations for the breach of contract claims and the extra-contractual claims have expired, and there is no issue of material fact that could be resolved in Plaintiffs' favor that would extend the tolling of the limitations period. Accordingly, Allstate's motion for summary judgment is **GRANTED** and the case is **DISMISSED with prejudice.**

IT IS SO ORDERED.

DONE this 22nd day of June, 2015, in McAllen, Texas.

_____
Micaela Alvarez
UNITED STATES DISTRICT JUDGE